Winston BRYANT, Attorney General of the State of Arkansas
*v*. ARKANSAS PUBLIC SERVICE COMMISSION

CA 97-1079                                984 S.W.2d 61

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 23, 1998

*Winston Bryant,* Att'y Gen., by: *M. Shawn McMurray,* Deputy Att'y Gen., and *Ralph M. Spory, Jr.,* Ass't Att'y Gen., for appellant.

*Lee McCullough,* for appellee Arkansas Public Service Commission.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Hermann Ivester,* for appellee Arkansas Oklahoma Gas Corporation.

S AM BIRD, Judge. This appeal is brought by the Attorney General, State of Arkansas from Order No. 15 of the Arkansas Public Service Commission (Commission). The Attorney General contends that Order No. 15 is unlawful because (1) it does not include sufficient detail and findings of fact to enable a reviewing court to determine how the Commission arrived at its decision, (2) it is not supported by substantial evidence, and (3) the terms of it are arbitrary, capricious, and unreasonable. We agree that Order No. 15 does not include sufficient findings to allow this court to conduct a meaningful review, and we reverse and remand.

Order No. 15 resulted from a petition for a rate increase filed by Arkansas Oklahoma Gas Company (AOG), which initially claimed a rate deficiency of $7,253,853 but later agreed to a revenue deficiency of $3,495,988. Thereafter, AOG, the staff of the Commission (Staff), and West Central Arkansas Gas Consumers (WCAGC), a group of fourteen industrial customers connected to AOG's gas distribution system, filed a "Stipulation and Agreement" with the Commission that proposed a total revenue

requirement of $38,584,136 and a revenue deficiency of $3,495,988 for AOG. Although the Attorney General had no dispute with the proposed revenue requirement and revenue deficiency included in the agreement, he urged the Commission to reject it because it assigned the entire revenue deficiency to the residential class, resulting in a 22% increase in residential rates.

A public hearing concerning the adoption of the Agreement was held by the Commission. AOG, Staff, and WCAGC produced evidence supporting its adoption. The Attorney General's witness argued that a 22% increase in rates to the residential class would cause "rate shock" and was, therefore, unreasonable and not in the public interest. The Attorney General urged the Commission to consider phasing in the rate increase over a period of time.

At the conclusion of the hearing, the Commission requested that the parties supplement the record with summary briefs, specifically addressing alternatives to the proposed 22% increase in residential rates. The Staff's brief contained an attachment outlining a three-year and a four-year phase-in plan for the 22% increase that included a 10.27% carrying charge on the uncollected balance. The Commission adopted the Agreement, conditioned upon the Staff's three-year phase-in plan. The Attorney General petitioned the Commission to rehear Order No. 15, but his petition was deemed denied after thirty days.

■■ Arkansas Code Annotated section 23-2-423(c)(3), (4), and (5) (Supp. 1997) defines our standard of review. We must determine whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the Constitutions of the State of Arkansas or the United States. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996); *Bryant v. Arkansas Pub. Serv. Comm'n*, 46 Ark. App. 88, 877 S.W.2d 594 (1994). In *Bryant v. Arkansas Pub. Serv. Comm'n*, the court stated:

> The Arkansas Public Service Commission has broad discretion in exercising its regulatory authority, and courts may not pass upon

the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *AT&T Communications of the Southwest, Inc. v. Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 129, 843 S.W.2d 855 (1992); *Russellville Water Co. v. Arkansas Pub. Serv. Comm'n*, 270 Ark. 584, 588, 606 S.W.2d 552 (1980). . . . This Court has often said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then this court must affirm the Commission's action. *Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 76, 813 S.W.2d 263 (1991).

55 Ark. App. at 135, 931 S.W.2d at 800.

In Order No. 15, the Commission reviewed the evidence that had been presented for and against the Agreement, concluding that "[b]ased upon all of the pre-filed testimony and oral testimony presented by Staff, AOG, and WCAGC, the Commission finds the [Agreement] supported by substantial evidence of record and represents a just and reasonable resolution of all issues in this proceeding and, therefore, is in the public interest, conditioned upon the proposed rate increase for residential customers being phased in using the three-year phase-in proposal as set forth in the attachment to Staff's May 23, 1997, post-hearing brief."

In *Bryant v. Arkansas Public Service Comm'n*, 46 Ark. App. 88, 877 S.W.2d 594 (1994), this court held that the Commission's statutory authority is broad enough to allow it to consider non-unanimous stipulations but cautioned that, in doing so, it must afford a nonstipulating party adequate opportunity to be heard on the merits of the rate application and the stipulation agreed to by some of the parties, and that it must make an independent finding, supported by substantial evidence, that the stipulation resolves the issues in dispute in a way that is fair, just and reasonable, and in the public interest. *See also Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 58 Ark. App. 145, 946 S.W.2d 730 (1997).

Arkansas Code Annotated section 23-2-421(a) (1987) requires that the Commission's decision be in sufficient detail to enable any court in which any action of the Commission is involved to determine the controverted question presented by

the proceeding. *Bryant v. Arkansas Pub. Serv. Comm'n*, 62 Ark. App. 154, 969 S.W.2d 203 (1998). On review, the appellate court must determine, not whether the conclusions of the Commission are supported by substantial evidence, but whether its findings of fact are so supported. *Id.; see also Arkansas Pub. Serv. Comm'n v. Continental Tel. Co. of Ark.*, 262 Ark. 821, 561 S.W.2d 645 (1978). The Commission's findings must be in sufficient detail to enable the courts to make an adequate meaningful review; courts cannot perform the reviewing functions assigned to them in the absence of adequate and complete findings by the Commission on all essential elements pertinent to a determination of a fair return. *Bryant v. Arkansas Pub. Serv. Comm'n*, 62 Ark. App. at 154, 969 S.W.2d at 207. We also stated:

> [I]f the commission fails to set forth sufficiently the findings and the evidentiary basis upon which it rests its decision, we shall not speculate thereon or search the record for supporting evidence or reasons, nor shall we decide what is proper. Instead, we shall remand the case in order to provide the commission an opportunity to fulfill its obligations in a supplementary or additional decision.

*Id.* (quoting *Bryant v. Arkansas Pub. Serv. Comm'n*, 45 Ark. App. 56, 64, 871 S.W.2d 414, 418 (1994)).

The Attorney General contends that Order No. 15 is unacceptable because it does not include sufficient detail and findings of fact to enable the court to determine how the Agreement represents a just and reasonable resolution of the issues in the proceeding or how the Agreement is in the public interest. He argues that the Commission has failed to explain how the Agreement can be in the public interest when the result of it is to allocate to the residential class a rate increase of 22%, which is more than 100% of the revenue deficiency, while at the same time decreasing the rates of the industrial class by 26%. He maintains that the Commission has failed to make findings supporting its conclusion that the three-year phase-in plan, which charges the residential class an additional $399,318 to phase in the 22% rate increase, is just and reasonable and in the public interest.

In Order No. 15, the Commission found that many of AOG's customers have the ability to bypass AOG's system, that the large industrial customers pay a large share of AOG's fixed costs, and that, if the industrial customers bypass AOG's system, AOG would lose revenue, thereby causing an increase in its rates to its remaining customers. Nevertheless, the Commission made no findings that address the Attorney General's concern about rate shock. The Commission's Order neither addressed whether it found that a risk of rate shock existed nor indicated whether the risk of bypass was weighed against the risk of rate shock. Furthermore, Order No. 15 contains no findings that support its decision to phase in the rate increase to residential class customers over three years. It merely recites: "Staff's proposal is designed to phase-in the rate increase to the residential class by 10 percent per year with a carrying charge on the uncollected balance at the pre-tax rate of return of 10.27 percent. Staff's phase-in proposal is reasonable and in the public interest."

■ As the trier of fact in rate cases, it is the Commission's function to decide on the credibility of the witnesses, the reliability of their opinions, and the weight to be given their evidence. See Bryant v. Arkansas Pub. Serv. Comm'n, 50 Ark. App. 213, 907 S.W.2d 140 (1995). This court must know what the findings of the Commission are before they can be given conclusive weight. Bryant v. Arkansas Pub. Serv. Comm'n, 62 Ark. App. at 154, 969 S.W.2d 206-07.

■ AOG and Staff argued in their posthearing briefs, and the Commission implies in Order No. 15, that the Attorney General is not in a position to argue about the adoption of the phase-in plan because it was the Attorney General who urged a phase-in of the 22% increase. We find no merit to this argument. Although it would unduly lengthen this opinion to recount the questions and answers from the hearing, it is apparent to us that counsel and the witness for the Attorney General never suggested or agreed to a phase-in plan that would further increase the rates that the residential class would be required to pay.

■ The Commission asserted that it was aware that acceptance of the Agreement would mean the end of subsidies to the

residential class. The Commission stated: "It is the position of AOG, Staff, and WCAGC that AOG's rates should be redesigned to eliminate inter-class subsidies and that AOG's rates be set based upon the cost of providing service to each customer class." Relying on this language, the Commission contends that Order No. 15 is perfectly clear as to what the Commission's findings of fact were and that it concluded that the risk of bypass by industrial customers was too great to continue the subsidization of residential customers. However, from the arguments, both before the Commission and in oral argument before this court, there seems to be a dispute among the parties as to whether adoption of the Agreement would end all inter-class subsidies. Therefore, we reverse and remand to the Commission.

Reversed and remanded.

PITTMAN, JENNINGS, ROGERS, STROUD, and ROAF, JJ., agree.